# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| COREY DAVENPORT | CIVIL ACTION NO. 25-1422 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| IRVING PLACE ASSOCIATES LP | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to stay and enforce an arbitration agreement filed by the defendant, Irving Place Associates LP ("Irving Place"). For the following reasons, the motion is granted.

## Background

Corey Davenport ("Davenport") resided in a nursing facility owned by Irving Place and alleged that he suffered injuries while under their care. Record Document 1-1 at 3. Davenport filed a petition for damages in state court against Irving Place for his alleged injuries, and less than a month later, Irving Place removed the lawsuit to this Court. *Id.*; Record Document 1. After removal, Irving Place filed its answer to Davenport's petition and asserted nineteen affirmative defenses. Record Document 17. Relevant here, Irving Place did not include an arbitration demand as one of its affirmative defenses. *See generally id.*

On November 3, 2025, as part of its regular docket management, the Magistrate Judge issued an order setting a scheduling conference and requiring the parties "meet, in person or by telephone, to develop a case management report and discuss the issues listed in F.R.C.P. 26(f)." Record Document 18 (internal

abbreviation omitted). In this order, the Magistrate Judge directed the parties to use the Court's standardized form for case management reports. *Id.* Among other things, the form required that the parties state their position on whether their litigation was amenable to alternative dispute resolution. Record Document 21.

On November 17, 2025, Irving Place and Davenport conducted the Rule 26(f) meeting as ordered and later filed their case management report ("Case Management Report"). Record Document 21. In their Case Management Report, Irving Place and Davenport stated: "The parties believe that mediation, after completion of discovery, may be helpful in this matter." *Id.* at 3. Irving Place did not reference arbitration in the Case Management Report. *See generally id.*

On the same day as the Rule 26(f) meeting, Davenport issued Irving Place discovery demands, including requests for admission, interrogatories, and requests for production. *See* Record Document 31 at 10.

A month later, on December 19, 2025, counsel for Davenport emailed Irving Place's attorney stating Irving Place had failed to respond to its discovery requests and demanding a discovery conference. Record Document 31-2. In response, the same day Irving Place received Davenport's demand for a discovery conference, Irving Place filed the pending motion to stay and to enforce an arbitration agreement. Record Document 25. Eventually, Irving Place also acquiesced to Davenport's discovery demands and provided discovery responses. *See* Record Document 31 at 11.

### Analysis

In the pending motion, Irving Place has asked to enforce an arbitration agreement with Davenport. Record Document 25. When considering a motion to

compel arbitration, federal courts use a two-step analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). "First, a court must determine whether the parties agreed to arbitrate the dispute in question. Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (internal citations and quotations omitted). The United States Court of Appeals for the Fifth Circuit has explained that the first step consists of two parts: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*

First, the Court finds that a valid agreement to arbitrate exists between Irving Place and Davenport. Irving Place produced a signed arbitration agreement. Record Document 34-1. The agreement includes the electronic signatures of an Irving Place representative, Angelina Ferezan, and the purported signature of Corey Davenport. *Id.* at 5. Despite his name appearing on the signature line for "resident," Davenport claims that Irving Place did not prove that he is the person who signed the document. Record Document 31 at 13. The Court is not persuaded.

To determine whether a valid arbitration agreement exists, federal courts apply "ordinary state-law principles that govern the formation of contracts." *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). In Louisiana, an electronic signature has "the same legal effect as all other types of signatures." *Pinnacle Sec. & Investigation Inc. v. Howard*, 378 So.3d 843, 859 (La. Ct. App. 2023). A party relying upon an electronic signature does not have an additional burden of proof unless the

other party denies signing the agreement. *Id.*; *see also Chester v. DirecTV, LLC*, 607 F. App'x 362, 365 (5th Cir. 2015).

In this case, Davenport did not deny that he signed the arbitration agreement. *See* Record Document 31-5 at 1. Although Davenport attests that he has "no independent recollection of signing any arbitration agreement[,]" he does not deny that he committed the act of signing. *See generally id.*; *cf. Chester*, 607 F. App'x at 364 (noting that the party put the existence of an arbitration agreement at issue where his affidavit stated: "I do not remember signing any arbitration agreement, *and dispute that I signed an arbitration agreement*[.]") (emphasis in original). Because Davenport does not deny signing the agreement, Irving Place does not have an additional burden of proof to validate his electronic signature. Therefore, Davenport's electronic signature alone is enough, and the Court holds that a valid agreement to arbitrate exists between the parties.

Second, the Court finds that the dispute in question falls within the scope of the arbitration agreement. The arbitration agreement stated that it applied to "[a]ny legal controversy, dispute, disagreement, or claim of any kind now existing or occurring in the future between the parties arising out of…the resident's stay at the facility." Record Document 34-1 at 3. Davenport does not dispute that the nature of his claim falls within the scope of their arbitration agreement. *See* Record Document 31 at 18. Davenport argues instead that some of his claims fall outside the temporal scope of their agreement. *Id.*

According to Davenport, even if the arbitration agreement is binding, he first entered Irving Place's facility on November 1, 2024 but did not sign the agreement

until four days later, November 5, 2024. Record Document 31 at 18. Davenport claims that the arbitration agreement does not have a retroactivity clause, so any conduct occurring between November 1 and November 5 is not subject to the arbitration agreement. *Id.*

The Court disagrees. The arbitration agreement stated that the parties "agree to all terms and conditions contained in the arbitration agreement" effective November 1, 2024. Record Document 34-1 at 2. Although not signed until four days later, that fact is of no moment because the parties clearly intended for the arbitration agreement to apply to all disputes "arising out of…the resident's stay at the facility." *Id.* at 3; *accord Kinsale Inc. Co. v. Georgia-Pacific, LLC*, 795 F.3d 452, 455 (5th Cir. 2015) (noting that "a judge's role is to determine the 'common intent' of the parties" when interpreting a Louisiana contract). Accordingly, the dispute between Davenport and Irving Place falls within the scope of the arbitration clause, and Irving Place has satisfied the first step of analysis.

At the second step of analysis, the Court considers whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Tittle*, 463 F.3d at 418. Under this prong, the party opposing arbitration has the burden to show that Congress expressly excluded from the Federal Arbitration Act the type of claims pleaded in the complaint. *Rojas v. TK Commc'n Inc.*, 87 F.3d 745, 748 (5th Cir. 1996). Here, Davenport has not argued that any external restraints exist that would foreclose the arbitration agreement, and as such, the Court finds that Irving Place has shown it has a valid arbitration agreement.

5

Even though the parties have a valid arbitration agreement, Davenport opposes enforcement because he attests that he cannot afford the arbitration costs. Record Document 31 at 19. The United States Supreme Court has noted that circumstances could exist in which "the existence of large arbitration costs could preclude a litigant…from effectively vindicating [his] federal statutory rights in the arbitral forum." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). However, the risk that the party opposing arbitration would "be saddled without prohibitive costs" must not be speculative. *Id.* at 91. As such, the Fifth Circuit requires a party resisting arbitration to provide "some individualized evidence that they likely will face prohibitive costs in the arbitration at issue and that they are financially incapable of meeting those costs." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004).

Here, Davenport has not provided "individualized evidence" that supports that he will face prohibitive costs in arbitration. In an affidavit, Davenport attested that he had no assets and that "arbitration of this case will cost us at least 30 to 40 thousand dollars." Record Document 31-5 at 2. However, Davenport's estimate on arbitration costs is nothing more than speculation and not supported with factual evidence. Davenport makes no attempt at articulating how he reached the figure of $40,000 for arbitration costs. Without more, the Court will not find that the parties' arbitration agreement is unenforceable because of prohibitive costs.

Finally, in the alternative, Davenport also argues that the agreement is not enforceable because Irving Place has waived its right of arbitration. Record Document 31 at 9. In the Fifth Circuit, a party waives the right of arbitration when it "knowingly

relinquished the right to arbitrate by acting inconsistently with that right." *Garcia v. Fuentes Restaurant Mgmt. Serv. Inc.*, 141 F.4th 671, 677 (5th Cir. 2025). The "substantial invocation of the judicial process is…one way of demonstrating that a party waived its right." *Id.*

According to Davenport, Irving Place substantially invoked the judicial process because it filed an answer that did not include an arbitration demand, agreed to a case management report that did not reference arbitration, and responded to its discovery demands. Record Document 31 at 12. To support his argument, Davenport relies on *Garcia v. Fuentes Restaurant Management Services Incorporated* where the Fifth Circuit found that the defendant substantially invoked the judicial process because the defendant issued its own discovery demands, affirmatively stated in the case management report that it would not demand arbitration, and did not include an arbitration demand as an affirmative defense in its answer. 141 F.4th at 678-80.

The Court rejects Davenport's argument that Irving Place substantially invoked the judicial process. In making this determination, the Court cannot "turn a blind eye to the realities of litigation." *Garcia*, 141 F.4th at 679. Examined together, Irving Place's actions amount to nothing more than responses to its litigation obligations.

Irving Place produced discovery only after Davenport served discovery demands and noticed a discovery conference, and it produced a Case Management Report solely as required by this Court's docket management procedures. These are reactive measures and not "some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *In re Mirant Corp.*,

613 F.3d 584, 589 (5th Cir. 2010). Although Irving Place did not raise arbitration as a defense in its answer or the Case Management Report, its conduct still does not rise to the level of activities in *Garcia* because Irving Place neither propounded its own discovery demands nor made any affirmative statements that it would forgo arbitration. Accordingly, the Court concludes that Irving Place did not substantially invoke the judicial process and has not waived its right of arbitration.

### Conclusion

For the foregoing reasons, the Court will enforce the parties' arbitration agreement and stay this proceeding. *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").

**DONE AND SIGNED** at Shreveport, Louisiana, this 13th day of May, 2026.

_____
ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE